# Third Department, January, 1966

## (January 4, 1966)

■ In the Matter of the Claim of ANN FRANZONI et al., Respondents, v. LOEW'S THEATRE & REALTY CORP. et al., Appellants. WORKMEN'S COMPENSATION BOARD, Respondent.— HAMM, J.  Appeal by two employers and their carriers from a decision and award of death benefits on the grounds that there is no substantial evidence to support the board's findings of causal relationship between the decedent's death and industrial accidents sustained on April 21, 1945 and July 2, 1954.  The board originally found that as a result of both injuries the decedent "was caused to develop a depressed state inducing him to commit suicide" and we reversed (22 A D 2d 741) because the state of the record was ambiguous as to whether the board had in fact found brain derangement or psychosis to be present or had found merely that the decedent was depressed.  The board has now found "that as a result of both accidental injuries deceased developed a psychosis which finally caused him to commit suicide."  That the decedent committed suicide is not disputed.  It is further undisputed that both the 1945 and 1954 occurrences were industrial accidents. The claimant's medical witness, an experienced psychiatrist stated that in his opinion the suicide was causally related to the injury sustained by the decedent in 1954.  He characterized the decedent's mental condition as "psychosis" and said that legally it could be called insanity.  There were conflicting expert opinions but we think, on this record, the selection of the opinion of the claimant's expert was an exercise of fact-finding power within the province of the board and that the board's finding of causal relation between the 1954 accident and the death was supported by substantial evidence.  As to the 1945 occurrence the doctor was asked whether the injury sustained "played any part either directly or indirectly in this man's demise at the time it occurred."  His answer was: "In my opinion it did not have a direct bearing but it was part and parcel of the predisposition of the disturbed personality which he had in the past and which played a part in his subsequent deeper reaction at the time when he was injured, after he was injured and the time he committed suicide." It appears that it was the doctor's intendment that the injury did not have "a direct bearing" in that it was not the immediate precipitant of the suicide; at least the board in the exercise of its fact-finding power could so construe the answer.  And the doctor continued that it was a contributing cause of the decedent's mental condition, which he had denominated psychosis, at the time of the suicide.  Viewed in the light of the record as a whole including the grounds on which the conclusions were based we think that the testimony, although, of course, controverted by other medical opinion, constituted substantial evidence in support of the board's findings as to the earlier accident. Decision affirmed, with costs to the Workmen's Compensation Board.  Reynolds and Taylor, JJ., concur; Gibson, P. J., and Herlihy, J., concur in part and dissent in part, in a memorandum by Herlihy, J.: The board found, without taking further testimony, that the medical evidence indicated that as a result of both accidents, deceased developed a psychosis which finally caused him to commit suicide.  At the time of the 1945 accident, the deceased struck his head, was unconscious for several hours, but thereafter reverted to his before-accident physical and mental status.  The causal relationship found by the board between the 1945 accident and decedent's death 14 years later depends solely upon a physician's equivocal and unclear answer to the equally unsatisfactory question, whether the 1945 incident "played any part either directly or indirectly in this man's demise".  The doctor replied that "it did not have a

direct bearing but it was part and parcel of the predisposition of the disturbed personality which he had in the past and which played a part in his subsequent deeper reaction at the time when he was injured, after he was injured and the time he committed suicide." The statement that "it did not have a direct bearing" seems clearly a denial of proximate cause and nothing in the obscure language that follows serves to establish a comprehensible theory of causal relationship. Further, the conclusion that the prior accident "played a part" is very similar to the testimony that an accident was a "factor" which we held insufficient in *Matter of Aponte* v. *Santiago & Garcia* (279 App. Div. 269, 275). While we agree that the record is sufficient to sustain the award for the 1954 accident, the evidence relied on to establish causal relationship to the 1945 accident is too indefinite and "but an imaginative structure built upon a theory." (See *Matter of Aponte* v. *Santiago & Garcia, supra.*) There are too many intervening events and sequelæ between the two happenings to permit the answer to the hypothetical question to sweep in the first accident. It is not for us to speculate and surmise, as does the majority statement, as to what might have been the doctor's intendment. The decision of the board should be modified so as to dismiss the award as to the 1945 accident and remitted for the making of a new award as to the 1954 accident.